UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| MARTIN J. HOGAN,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY,<br><br>　　　　　Defendant. | Civ. No. 3:25-cv-01860<br><br>November 4, 2025 |

## COMPLAINT

Plaintiff, Martin J. Hogan, through his attorneys, Carey & Associates, P.C., for his Complaint against the above-named Defendants hereby states as follows:

### INTRODUCTION

1. This is an action by a participant in an employee welfare benefit plan governed by Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et. seq. ("ERISA").

2. Plaintiff seeks appropriate equitable relief arising from Defendant's material misrepresentations upon which Plaintiff reasonably relied to his detriment, as well as Defendant's failure to discharge fiduciary duties solely in the interest of plan participants, in accordance with the Plan documents, and with the care, skill, prudence, and diligence as a prudent person would use in similar circumstances.

### PARTIES

3. Plaintiff is an adult resident of the State of Illinois and currently resides in Winnetka, Illinois.

4. Defendant, Hartford Life and Accident Insurance Company (The Hartford), upon information and belief is a corporation domiciled in and organized under the laws of Connecticut, licensed to do business in Illinois.

5. Prior to 2016, The Hartford issued a long-term disability (LTD) insurance plan to Trinity Health, including Loyola University Medical Center, identified as Policy Number GLT-696981 (the Plan).

6. At all times relevant to this complaint, the Plan has remained in full force and effect.

7. The Hartford administers and insures claims arising under the Plan.

8. Upon information and belief, The Hartford is a fiduciary of the Plan within the meaning of 29 U.S.C. 1002(21)(a) and 29 U.S.C. § 1102(a).

## JURISDICTION AND VENUE

9. Jurisdiction over this action is conferred upon this court because the claims herein arise under ERISA.

10. Venue is proper in the District of Connecticut pursuant to ERISA § 502(e)(2) and 28 U.S.C. § 1391(b) because Defendant resides in this judicial district.

11. Plaintiff's administrative remedies have been exhausted as a condition precedent to filing this action.

## FACTS

**A. Employment History and Disability Onset**

12. Prior to the onset of his disability, Plaintiff worked for Loyola University as both a fulltime dentist and the director of the University's dental residency program, earning $13,163.34 per month.

13. During the course of his employment, Plaintiff was eligible for certain employee benefits, including coverage under the Plan.

14. In September 2016, Plaintiff was diagnosed with cancer and was immediately hospitalized for over a month to undergo aggressive chemotherapy.

15. Following Plaintiff's discharge, he continued to receive intensive daily outpatient chemotherapy for three and a half years, through the winter of 2020.

16. From the date of his diagnosis until July 1, 2018, Plaintiff was unable to work in any capacity whatsoever.

**B. Plaintiff's Initial SSD and LTD Claims Are Approved**

17. Upon becoming disabled, Plaintiff filed claims for LTD benefits with the Hartford and Social Security Disability Insurance (SSDI) Benefits.

18. The Hartford determined Plaintiff became disabled, as that term is defined by the Plan, on September 21, 2016 and approved his LTD claim with a benefit start date of approximately March 20, 2017.

19. Under the terms of the Plan, Plaintiff's Initial Benefit was worth $6,581.67 per month, which is fifty percent (50%) of his pre-disability earnings.

20. Meanwhile, the Social Security Administration (SSA) also determined Plaintiff to be disabled and eligible to receive primary SSD benefits of $2,362 per month and dependent SSD benefits of $1,181 per month effective March 1, 2017.

21. On July 1, 2019, Plaintiff returned to work in an exceedingly limited capacity in a non-clinical role, earning approximately $2,400 per month. However, because he exceeded the earnings limit for SSD benefits, those benefits ended on June 30, 2019.

22. From March 1, 2017, until his SSD benefits ended on June 30, 2019, The Hartford reduced Plaintiff's LTD benefits by the amount he received in primary and dependent SSD benefits, resulting in a net LTD benefit of $3,038.67 per month.

23. Despite his return to work, The Hartford appropriately determined Plaintiff remained disabled as that term is defined by the Plan.

24. Upon the termination of his SSD benefits, The Hartford resumed paying Plaintiff's Initial Benefits in the amount of $6,581.67 per month.

**C. The Hartford Reassures Plaintiff He Will Continue Receiving the Initial Benefit Amount.**

25. The Hartford continued paying Plaintiff LTD benefits at the rate of fifty percent (50%) of his pre-disability earnings through March 31, 2025.

26. At all times relevant to this Complaint, Plaintiff fully cooperated with The Hartford, regularly corresponded with its representatives, and promptly responded to all of its requests for additional information.

27. From July 1, 2019, until March 31, 2025, Plaintiff wrote to the Hartford on multiple occasions to verify the value of his current and future LTD benefits.

28. In an email dated January 20, 2021, he explained, "I am just trying to plan ahead so that myself and my family will know what funds we have coming in each month" and that "I just want to be prepared and ready for changes as they come about."

29. In response to each of his inquiries, The Hartford reassured him in no uncertain terms that his gross monthly LTD benefit would continue to remain fifty percent (50%) of his pre-disability earnings, or $6,581.67 per month.

30. For example, on January 16, 2018, Claim Ability Analyst Kelsey Meier explained in writing that, from February 2019 onward, Plaintiff's gross LTD benefit would continue to be calculated at fifty percent (50%) of his pre-disability earnings.

31. Likewise, in January and August 2021, Senior Ability Specialist, Todd Rupert, assured Plaintiff in writing that his gross LTD benefit would remain equal to fifty percent (50%) of his pre-disability earnings.

32. Plaintiff relied on The Hartford's guarantee that his gross LTD benefit would remain equal to fifty percent (50%) of his pre-disability earnings in making significant life decisions and incurring expenditures.

**D. Hartford Discovers Its Error and Demands Repayment from Plaintiff**

33. Unbeknownst to Plaintiff and contrary to the Hartford's written confirmation, he should have only received the Initial Benefit amount (i.e., $6,581.67 per month) for the first thirty (30) months of Disability, or until March 20, 2019.

34. According to the Plan's terms, after thirty (30) months (or effective March 21, 2019), Plaintiff's eligibility for the Initial Benefit should have ended and he instead should have become eligible for the Continuing Benefit in the lesser amount of $2,632.67 per month, which is twenty percent (20%) of his pre-disability earnings.

35. On or about April 8, 2025, and completely out of the blue, Plaintiff received a phone call from Tarisha Bentley, a Claims Solutions representative from The Hartford, notifying him that his claim had been overpaid by $272,481.00 and asking if he'd like to remit payment by credit card or check.

36. Plaintiff was shocked and thinking the call was a scam, politely ended the call.

37. However, just over a week later, on April 17, 2025, the Hartford mailed a letter to Plaintiff alleging it had overpaid his claim by $272,481.00 and providing calculations to support the alleged overpayment.

38. Specifically, the Hartford cited the Plan provision that allowed it to decrease Plaintiff's monthly benefit from fifty (50) to twenty (20) percent of his pre-disability earnings after thirty (30) months of disability.

39. By Defendant's admission, its overpayment of Plaintiff's LTD benefits was due solely to Defendant's error.

40. On August 4, 2025, Plaintiff filed a timely appeal of Defendant's overpayment determination.

41. On August 20, 2025, Defendant denied Plaintiff's appeal based on conclusory claims that Defendant had performed a "full and fair review of Policy language and all documents," and that notwithstanding Plaintiff's legal arguments to the contrary, "the Policy language determines how benefits are calculated and whether an overpayment can occur."

42. Defendant did not provide a reasoned basis for its disregard of Plaintiff's evidence in support of his appeal.

43. Defendant did not perform a "full and fair review" of Plaintiff's claim.

44. Defendant failed to consider the issues raised in Plaintiff's appeal.

45. Defendant failed to engage in a meaningful dialogue with Plaintiff.

46. Defendant's denial of Plaintiff's appeal caused Plaintiff to suffer the loss of benefits and to incur expenses.

47. At all times material to this complaint, Plaintiff has remained disabled as defined by the Plan.

## FIRST CAUSE OF ACTION:
## PROMISSORY ESTOPPEL

48. Plaintiff incorporates by reference the above paragraphs as though stated fully herein.

49. The Second Circuit recognizes a claim for promissory estoppel under ERISA with the following elements: "(1) a promise, (2) reliance on the promise, (3) injury caused by the reliance, (4) an injustice if the promise is not enforced and (5) extraordinary circumstances." *Sullivan-Mestecky v. Verizon Communs. Inc.*, 961 F.3d 91, 99 (2d Cir. 2020) (cleaned up).

50. Defendant promised Plaintiff in writing that the calculations they provided to him regarding the value of his current and future monthly LTD benefit were accurate.

51. Defendant induced Plaintiff's reliance by providing specific calculations of his LTD benefit in writing and verifying in writing that such calculations were accurate.

52. Plaintiff relied on Defendant's promise when he made major financial decisions over the course of several years, which he would have made differently had he not been assured of the value of his ongoing LTD benefit.

53. Plaintiff's reliance on Defendant's promise was reasonable.

54. Defendant did not fulfill its promise to Plaintiff that his LTD benefits would be payable in accordance with the calculations performed by Defendant's representatives.

55. Rather, Defendant actively reneged on its promise by demanding a repayment of $272,481.00 worth of LTD benefits.

56. Plaintiff suffered a detriment as a result of his reliance on Defendant's written material representations in the form of significant financial expenditures over the course of several years.

57. Injustice to Plaintiff can be avoided only by enforcing Defendant's promise, since failure to do so would cause significant financial harm to Plaintiff due to Defendant's misrepresentations.

58. Extraordinary circumstances are present in the instant case, given the significant misrepresentations by Defendant's representatives to Plaintiff which rise to the level of gross negligence.

**SECOND CAUSE OF ACTION:**
**BREACH OF FIDUCIARY DUTY**
**29 U.S.C. § 1132(a)(3)**

59. Plaintiff incorporates by reference the above paragraphs as though stated fully herein.

60. 29 U.S.C § 404(a)(1)(A)(i) provides that a fiduciary "shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and ... for the exclusive purpose of ... providing benefits to participants and their beneficiaries."

61. 29 U.S.C § 404(a)(1)(D) provides that a fiduciary "shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and ... in accordance with the documents ... governing the Plan."

62. Under 29 U.S.C. § 1104(a)(1)(B), fiduciaries breach their duties when they fail to discharge their duties with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use.

63. Defendant is a fiduciary of the Plan.

64. Defendant violated its fiduciary duties under 29 U.S.C. § 1104(a).

65. Defendant failed to discharge its duties solely in Plaintiff's interest, in accordance with the Plan documents, and with the care, skill, prudence, and diligence as a prudent person would use in similar circumstances.

66. Defendant breached its fiduciary duty owed to Plaintiff when they failed to provide Plaintiff with accurate information regarding the value of Plaintiff's LTD benefits.

67. Defendant breached its fiduciary duty owed to Plaintiff when it paid Plaintiff the incorrect amount of LTD benefits for nearly six years and subsequently attempted to recover all such benefits.

68. Defendant's violation of its fiduciary duties resulted in harm to Plaintiff.

### THIRD CAUSE OF ACTION:
### DENIAL OF BENEFITS IN VIOLATION OF
### SECTION 502(a)(1)(B) OF ERISA

69. The preceding paragraphs are reincorporated by reference as though set forth here in full.

70. After it notified Plaintiff that it had overpaid his claim, Defendant ceased remitting ongoing LTD benefits to Plaintiff despite its agreement that he remained eligible for the same; instead, it withheld those benefits and applied them towards Plaintiff's outstanding overpayment balance.

71. Because Defendant is prohibited from recovering the overpayment, its withholding of Plaintiff's benefits is wrongful, arbitrary and capricious, and downright unreasonable.

72. For these and other reasons, Defendant wrongfully denied Plaintiff his LTD benefits, and Plaintiff is entitled to said benefits pursuant to § 502(a)(1)(B) of ERISA.

**REQUEST FOR RELIEF**

Wherefore, Plaintiff, Martin Hogan, demands judgment from Defendant for the following relief:

A. An Order clarifying that Defendant may not lawfully pursue the $272,481.00 overpayment which it claims Plaintiff owes, either through legal action, garnishment of ongoing LTD benefits, or any other method of recovery;

B. An Order requiring Defendant to pay all retroactive LTD benefits owed to the Plaintiff;

C. Reasonable attorney's fees and costs; and

D. Such further relief as the Court may deem appropriate.

Dated: this Fourth day of November, 2025.


By:  /s/ *Elizabeth W. Swedock*
    Elizabeth W. Swedock, Esq. (ct28907)
    Carey & Associates, P.C.
    71 Old Post Road, Suite One
    Southport, CT 06890
    Telephone: (203) 255-4150
    Facsimile: (203) 255-0380
    Email: eswedock@capclaw.com

    *Attorneys for Plaintiff, Martin J. Hogan*